**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**REX M. MARTINEZ, ESQ.**
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
E-mail: jfoley@hkm.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JOEN MELENDEZ, an Individual, | CASE NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| MASTERCORP COMMERCIAL SERVICES, LLC, a foreign company; DOES I -X; ROE CORPORATIONS I -X. | |
| Defendants. | |

The Plaintiff Joen R. Melendez ("**Plaintiff**" or "**Ms. Melendez**") by and through her attorneys, Jenny L. Foley, Ph.D., Esq, Dana Sniegocki, Esq. and Rex Martinez, Esq., of HKM Employment Attorneys LLP, hereby complains and alleges as follows:

### JURISDICTION

1. This is an action for damages brought by Plaintiff for unlawful workplace discrimination based on sex under Title VII of the Civil Rights Act of 1964 ("Title VII") and for retaliation under Federal Law, 42 U.S.C. § 2000e-3 and State Law, NRS 613.340.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28

U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3.  All material allegations contained in this Complaint are believed to have occurred in Clark County, Nevada. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

### **EXHAUSTION OF ADMINISTRATIVE REMEDY**

4.  On or about July 10, 202, Plaintiff initiated the process of filing a Charge of Discrimination against her former employer, the Defendant named in this action, with the Nevada Equal Rights Commission ("NERC") wherein she alleged discrimination based on sex and on retaliation (Charge # 487-2019-01734).

5.  On or about February 19, 2021, Plaintiff received her Notice of Right to Sue from the EEOC.

6.  This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

7.  Plaintiff has exhausted her administrative remedy on all claims pled hereunder prior to filing this action with this Court.

### **GENERAL ALLEGATIONS**

8.  Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

9.  Plaintiff is a United States citizen and current resident of Las Vegas, Nevada.[1]

10. Defendant MASTERCORP COMMERCIAL SERVICES, LLC ("Defendant" or "MasterCorp") is a foreign company and an employer in the State of Nevada.

11. At all times relevant to this matter, Defendant had well over 100 employees, and is therefore subject to the provisions of Title VII.

12. Plaintiff first began her employment with Defendant on January 30, 2017 as an

---

[1] During Plaintiff's employment with Defendant, she had the name Joen Rivera.

Page **2** of **10**

Assistant Executive Housekeeper at the Wyndham Grand Desert Resort ("Wyndham") in Las Vegas, NV.

13. In approximately January 2019, Defendant hired Jesus Montano ("Mr. Montano") as an Executive Housekeeper, who became Plaintiff's supervisor.

14. Almost immediately, Mr. Montano began to act in sexually harassing manner toward Plaintiff.

15. One such example is when, in January 2019, Mr. Montano texted Plaintiff inappropriate sexual messages, such as, "I know me! When I got a few drinks . . . But as I told you I get/become little touchy" and would ask Plaintiff if she would pick him up, take him home, and put him to bed.

16. In early February of 2019, while Mr. Montano was on a business trip, he texted Plaintiff once again, asking if she would put him in bed.

17. Plaintiff would attempt to divert the comments as to not make it awkward work environment, but the comments persisted, and Plaintiff felt as if her job would be affected if she did not answer.

18. Upon Mr. Montano's return, he explained that the inappropriate comments were because he was drunk.

19. Nevertheless, Plaintiff made Mr. Montano aware that that types of messages made her feel uncomfortable, to which Mr. Montano responded that he would not do it again.

20. Plaintiff was hesitant about immediately reporting these incidences as it would only further the hostile environment, especially given that, upon information and belief, Mr. Montano was good friends with the General Manager of the Wyndham and client of Defendant.

21. On or about February 14, 2020, upon information and belief, during work, Mr. Montano disagreed with some of Plaintiff's decisions, and not only said to Plaintiff in a demeaning tone that she "should thank God that I like/love you or else you wouldn't be here," but he said this to Plaintiff while touching her shoulder.

22. Plaintiff left that shift discouraged, uncomfortable, and fearing for her job.

23. On or about February 19, 2019, Plaintiff complained of Mr. Montano's sexual

harassment to Leisset Herrera ("Ms. Herrera"), a regional director.

24. Plaintiff explained to Ms. Herrera that there were at least two occasions where Mr. Montano sent her texts that were sexual in nature and that she was fearing retaliation and losing her job.

25. Ms. Herrera met Plaintiff at a Starbucks and further discussed the only going harassment as well as Plaintiff showing Ms. Herrera the text messages.

26. Plaintiff stated that she wanted to be transferred away from Mr. Montano, but Ms. Herrera said to wait until she spoke with someone in Human Resources.

27. On February 21, 2019, at Mr. Herrera's request, Plaintiff sent her an email detailing the harassment.

28. On February 25, 2019, Sally Martinez ("Ms. Martinez"), a Manager in Human Resources, requested a meeting with Plaintiff, which occurred the following day.

29. During the meeting, Plaintiff explained the ongoing harassment and requested to be transferred to another property to get away from Mr. Montano, despite her not wanting to leave Wyndham because it was considered to be the best property to work at.

30. Furthermore, Plaintiff allowed Ms. Martinez to go through the text messages and take pictures.

31. After some time, Ms. Martinez stopped taking pictures of the messages, stating that she had seen enough, would investigate the matter with fellow HR colleagues for assistance, and would inform Plaintiff of a resolution.

32. On or about March 5, 2019, Plaintiff met with Ms. Martinez, who informed her that Defendant has a zero-tolerance policy for sexual harassment and that Mr. Montano had been placed on a last and final notice.

33. Further, Ms. Martinez instructed Plaintiff that if Mr. Montano made any other comments that he would be terminated, and if Mr. Montano retaliated against Plaintiff, she should bring another complaint.

34. However, Ms. Martinez then denied Plaintiff's transfer to another property, explaining that Plaintiff was too good at her job and that she was being "groomed" for

1  promotion.

2  35. Plaintiff told Ms. Martinez that she appreciated the chance for a promotion, but that she would rather transfer to avoid the hostile work environment.

36. Ms. Martinez replied that Plaintiff was too good of a worker, and so she was needed at the flagship property; thus, denying Plaintiff's request for transfer.

37. Upon information and belief, after the meeting with Ms. Martinez, Plaintiff returned to the office where Mr. Montano was before he was called into the corporate office.

38. Upon information and belief, about an hour later, Mr. Montano returned and began removing all of his personal belongings.

39. After taking some paid time off and spending time working for a property in Arizona, Plaintiff returned to work at the Wyndham on April 25, 2019, but Mr. Montano was not in the office.

40. The following day, Mr. Montano returned to work and at approximately 9:30 A.M., he entered Plaintiff's office and shut the door.

41. Mr. Montano updated Plaintiff on what had occurred over the past few weeks and then asked for her professional opinion on a work matter.

42. Mr. Montano asked Plaintiff's thoughts on whether Defendant should charge Wyndham for deep cleans but just have the housekeepers clean the units as general checkouts to increase turn around.

43. Plaintiff conveyed her opinion that she would never do that as it would be unethical, constitute fraud, and lead to a breach of contract.

44. Mr. Montano then asked if he should call more housekeepers for overtime as Mr. Montano believed that there were too many checkouts.

45. Plaintiff said that he should wait because she was instructed by Ms. Herrera to have less overtime.

46. Mr. Montano became angry and yelled at Plaintiff, "Well then, I'm sending you to clean the rooms!"

47. Plaintiff responded that she was fine cleaning rooms if that is what needed to be

done.

48. Mr. Montano responded, "Well then go and work at another place. This is not the place for you."

49. Plaintiff attempted to explain that she felt very uncomfortable with how he was speaking to her, and that they should take the matter to HR.

50. Mr. Montano refused and instead called Mr. Herrera on speaker phone before Plaintiff could contact HR.

51. Plaintiff explained the situation, but not entirely as Mr. Montano was hovering over her and listening to every word, so she could not be completely honest.

52. After Ms. Herrera told them to wait and that she would call them back, Mr. Montano apologized to Plaintiff.

53. Mr. Montano also tried to touch and hug Plaintiff, but she was still very uncomfortable and so avoided Mr. Montano's attempt to touch her.

54. Later that same day, Ms. Herrera and Ms. Martinez came into the office and met with Plaintiff.

55. Through tears, Plaintiff explained what happened and that she did not feel as if it was a healthy to work in such an environment.

56. Ms. Herrera then replied that feelings do not belong at work and that Plaintiff is perhaps the one creating the hostile work environment.

57. Ms. Herrera then called three other employees, two dispatchers and one Housekeeping Manager, to ask about Plaintiff's job performance.

58. After speaking with the other employees, as well as Mr. Montano, Ms. Herrera called Plaintiff back into the office, where Ms. Martinez also remained.

59. Ms. Herrera told Plaintiff that according to the dispatchers, Plaintiff had not been as helpful as before.

60. Plaintiff responded that Mr. Montano had recently removed her from operations, which were part of her regular duties, and so now she was only left in charge of office duties and hiring.

61. Plaintiff felt as if she was being humiliated because she was in tears as Ms. Herrera kept rolling her eyes at Plaintiff when she spoke.

62. Despite Ms. Martinez being from HR, she said very little as Ms. Herrera was seemed to be in charge of the situation.

63. Both Ms. Martinez and Ms. Herrera left the room and upon their return, Plaintiff stated that she felt as if she needed to resign because of how she was being treated, and Ms. Herrera replied that shew as fine by her.

64. Plaintiff signed a generic resignation letter without being given time to fill in the statement section for the reason for her departure, which occurred on May 12, 2019.

65. Plaintiff has been a model employee since she began working for Defendant.

66. Plaintiff has had no disciplinary issues during her employment.

67. Upon information and belief, Defendant intentionally discriminated against Plaintiff based on her sex, female, by allowing, enabling, and failing to rectify a hostile work environment toward women, even after Plaintiff reported it.

## FIRST CAUSE OF ACTION

**(Discrimination Based on Sex in violation of Federal law, 42 U.S.C. § 2000e-3, and State Law, NRS 613.340)**

68. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

69. Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex.

70. Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, Title VII and NRS 613.330 et. seq., as amended, and thus, has a legal obligation to provide Plaintiff and all employees a working environment free from discrimination.

71. Mr. Montano created a hostile work environment by making constant, pervasaive, and sexual comments as well as touching her or trying to touch her at uncomfortable times.

72. Defendant was aware of the hostile environment being created by Mr. Montano

as Plaintiff reported it multiple times to multiple people, including Human Resources.

73. Defendant not only failed to address Mr. Montano's innapropriate sexual behavior, despite claiming it had given him a final warning, but Defedant also ratified and condoned that behavior by accusing Plaitniff of being the instigator.

74. No other similarly situated persons, not of Plaintiff's protected class were subject to the same or substantially similar conduct.

75. Plaintiff suffered adverse economic impact due to mistreatment and hostility while working for Defendant where she lost her job duties and was forced to resign.

76. Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

77. Plaintiff suffered compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety, and depression resulting from this unlawful discrimination by her employer.

78. Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

79. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's intentional repeated violations of federal and state civil rights laws.

80. Plaintiff suffered damages in an amount deemed sufficient by the jury.

81. Plaintiff is entitled to an award of reasonable attorney's fees.

82. Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her sex.

83. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

**SECOND CAUSE OF ACTION**

**(Retaliation under Federal Law, 42 U.S.C. § 2000e-3 and State Law, NRS 613.340)**

84. Plaintiff incorporates all of the allegations in the preceding paragraphs as

though fully set forth herein.

85. In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after she complained of acts which she reasonably believed were discriminatory.

86. In violation of NRS 613.340 Defendant retaliated against Plaintiff after she complained of acts, which she reasonably believed were discriminatory.

87. Mr. Montano specifically threatened Plaintiff's job for reporting the hostile work environment, and when she tried to report the retaliation, he further retaliated against her by not allowing her to report his inappropriate conduct directly and confidentially to HR.

88. Mr. Montano also relieved Plaintiff of her operations duties as well as attempted to get her to agree to unethical practices, which she believed would have been used to terminate her, avoiding the appearance of retaliation.

89. Further, Defendant retaliated against Plaintiff for making these continuous reports of a hostile work environment by blaming her for the hostile work environment and forcing her resignation.

90. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

91. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal and state statutes.

92. Plaintiff suffered damages in an amount deemed sufficient by the jury.

93. Plaintiff is entitled to an award of reasonable attorney's fees.

94. Defendant is guilty of oppression, fraud or malice, express or implied because Defendant knowingly and intentionally retaliated against Plaintiff because she complained of acts she considered retaliatory.

95. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

**WHEREFORE,** Plaintiff prays this court for:

    a. A jury trial on all appropriate claims;

1  moreover, to enter judgment in favor of the Plaintiff by:

2      b.  Awarding Plaintiff an amount sufficient to fully compensate her (including tax consequences) for all economic losses of any kind, and otherwise make her whole in accordance with Title VI;

5      c.  General damages;

6      d.  Special damages;

7      e.  An award of compensatory and punitive damages to be determined at trial;

8      f.  Pre- and post-judgment interest;

9      g.  An award of attorney's fees and costs; and

10      h.  Any other relief the court deems just and proper.

11  Dated this 20th Day of May, 2021.

**HKM EMPLOYMENT ATTORNEYS, LLP**

*/s/ Jenny L. Foley*
**JENNY L. FOLEY, Ph.D., Esq.**
Nevada Bar No. 9017
**DANA SNIEGOCKI, ESQ.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**REX M. MARTINEZ, ESQ.**
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
E-mail: jfoley@hkm.com
*Attorney for Plaintiff*